# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Weston Wilson and David Manderson, as Trustees of the South Central Minnesota Electrical Workers' Family Health Plan, and each of their successors,<br><br>Plaintiffs,<br><br>v.<br><br>O'Brien & Wolf, LLP, and Travis R. Schurhammer,<br><br>Defendants. | Case No. 0:17-cv-01885 (SRN/SER)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Amanda R. Cefalu and Bryan J. Morbeu, Kutak Rock, 60 South Sixth Street, Suite 3400, Minneapolis, Minnesota 55402, for Plaintiffs.

Daniel J. Heuel, O'Brien & Wolf, LLP, 45 Twenty-Eighth Street Southeast, Suite 300, Rochester, Minnesota 55904, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on two motions: Plaintiffs' Motion for Preliminary Injunction and Expedited Discovery [Doc. No. 4] and Defendants' Joint Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion to Dismiss") [Doc. No. 22]. For the reasons stated below, the Court grants Defendants' motion in part and denies it in part. The Court

finds that the remaining claims are not ripe for judicial determination, and dismisses them without prejudice.  The Court denies Plaintiffs' motion as moot.

## II.    BACKGROUND

Plaintiffs Weston Wilson and David Manderson ("Plaintiffs") are trustees of the South Central Minnesota Electrical Workers' Family Health Plan ("the Plan"), an employee benefit plan administered under the federal Employee Retirement Income Security Act ("ERISA").  On June 6, 2017, Plaintiffs filed suit against Defendants O'Brien & Wolf, LLP ("O'Brien & Wolf") and Travis R. Schurhammer ("Schurhammer"), seeking injunctive relief under ERISA, 29 U.S.C. § 1132(a)(3), and the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Compl. [Doc. No. 1].)

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  Thus, the Court recites the facts as alleged in Plaintiffs' Complaint.

Until September 2015, Schurhammer was a participant in the Plan, and had agreed to the General Plan Provisions, including the Plan's provisions requiring subrogation and reimbursement from the proceeds of any recovery obtained by a participant against a third party.  The General Plan Provisions include the following statements:

- In return for receipt of benefits from the Plan, the Eligible Individual agrees that the Plan has first priority subrogation and reimbursement rights . . . .

- The Plan's first priority subrogation and reimbursement rights grant the Plan an equitable lien on the proceeds of any recovery obtained by the Eligible Individual from a Third-Party, whether by settlement, judgment or otherwise.

> The Plan's recovery operates on every dollar received by the Employee or Beneficiary from a third party. . . . If the Eligible Individual fails to hold the recovery proceeds in trust or in any other way prejudices or adversely impacts the Plan's first priority subrogation and reimbursement rights, the Plan reserves the right to, among other things, pursue all available equitable action and offset future benefits . . . .

- The Plan will not be responsible for any attorney's fees or cost incurred by the Eligible Individual in any legal proceeding or claim for recovery . . . .

(Compl. ¶ 16.)  After Schurhammer was injured in a snowmobile accident on February 15, 2014, the Plan paid for his medical and disability benefits, totaling $152,738.95.  (*Id.* ¶¶ 17, 19.)    In order to receive these benefits, Schurhammer signed a "subrogation acknowledgement agreement," which restated the Plan provisions for subrogation and reimbursement after recovery from third parties.  (*See id.* ¶ 18; *id.*, Ex. C [Doc. No. 1-3].)

Schurhammer hired O'Brien & Wolf to represent him in relation to the snowmobile accident.    (Compl.  ¶¶ 8, 20.)    Plaintiffs allege, upon information and belief, that Schurhammer agreed to pay O'Brien & Wolf one-third of any recovery plus costs.  (*Id.* ¶ 37.)  O'Brien & Wolf reached a settlement of Schurhammer's claims, for a total sum of $800,000.  (*Id.* ¶ 20.)  Plaintiffs allege, upon information and belief, that Defendants then agreed that Schurhammer would pay O'Brien & Wolf one-third of his net recovery only, that is, one-third of the money that remained after Schurhammer had reimbursed the Plan for the $152,738.95 of benefits he received relating to the snowmobile accident.  (*Id.* ¶ 38.)

O'Brien & Wolf attempted to negotiate with the Plan to obtain attorney's fees for the $152,738.95 reimbursement.  (*Id.* ¶¶ 21-24, 29.)  When negotiation failed, O'Brien & Wolf reimbursed the Plan the entirety of the benefits its client received—$152,738.95—from the

settlement and gave notice of its intent to enforce an attorney's lien on the recovery.  (*Id.* ¶ 30; *id.*, Ex. G [Doc. No. 1-7].)  About a month later, on May 10, 2017, O'Brien & Wolf filed a Petition to Establish Attorney's Lien against the Plan in Olmstead County, Minnesota State District Court, alleging that it "remains uncompensated by the Plan for having recovered the $152.738.95 referred to herein."  (*Id.*, Ex. H [Doc. No. 1-8], ¶ 9.)  Plaintiffs then filed this action in federal district court.

In their Complaint, Plaintiffs seek injunctive relief under ERISA § 502(a)(3), which permits a civil action by a plan trustee "to obtain . . . appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3). Plaintiffs ask the Court to enjoin O'Brien & Wolf from pursuing the state action for an attorney's lien, to enjoin both defendants from spending, disbursing, or otherwise dissipating the remaining settlement proceeds, and to compel Schurhammer to specifically perform his obligations under the Plan by paying the remaining attorney's fees.  (Compl. ¶¶ 34-44.)  Plaintiffs also ask the Court to issue declaratory judgments that ERISA preempts O'Brien & Wolf's claim for attorney's fees and requires full reimbursement of benefits paid without reduction for attorney's fees.   (*Id.*)   Finally, Plaintiffs seek an order that Schurhammer is obligated to indemnify the Plan for any attorney's fees it is compelled to pay as a result of O'Brien & Wolf's state action.  (*Id.*)  Plaintiffs also seek a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, requesting similar relief under that statute.  (Compl. ¶¶ 45-48.)  Plaintiffs moved for a preliminary injunction staying

the state action and requested expedited discovery of O'Brien & Wolf's handling of the

settlement recovery.  (Mot. for Prelim. Inj. and Expedited Disc.)

Defendants filed a joint Motion to Dismiss, arguing that Plaintiffs' claims should be

dismissed for lack of subject matter jurisdiction and for failure to state a claim for which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Joint Mem. in

Supp. of Mots. to Dismiss [Doc. No. 24] ("Defs.' Mem. in Supp."), at 4-11.[1])

## III.    DISCUSSION

Defendants argue that the Court lacks subject matter jurisdiction because ERISA

does not govern O'Brien & Wolf's state action for attorney's fees.  (*Id.* at 5-9.)  Defendants

further argue that Plaintiffs fail to state a claim upon which relief may be granted, because

Schurhammer has fully performed his obligations to the Plan and O'Brien & Wolf has never

been a contracting party with the Plan.  (*Id.* at 9-11.)  The Court finds that Plaintiffs fail to

state a claim against Schurhammer, and dismisses those claims with prejudice.  The Court

further finds that Plaintiffs' claims against O'Brien & Wolf are not ripe, and dismisses them

without prejudice.

### A.  Failure to State a Claim Against Schurhammer

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint "must

contain . . . a short and plain statement of the claim showing that the pleader is entitled to

relief."  Although the complaint need not contain "detailed factual allegations," it must

---

[1]    All references to page numbers in this Opinion are those assigned by the CM/ECF
system.

plead facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quotations and citation omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court assesses plausibility by drawing "on its judicial experience and common sense." *Id.* at 679. While ordinarily only the facts alleged in the complaint are considered in deciding a motion to dismiss, "materials attached to the complaint as exhibits may be considered," *id.*, as well as public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Plaintiffs claim that Schurhammer violated the General Plan Provisions by agreeing to pay O'Brien & Wolf its one-third contingency as calculated from his net settlement recovery—the amount left over after reimbursing the Plan—rather than from his gross settlement recovery. (Compl. ¶ 32.) This enabled O'Brien & Wolf, Plaintiffs argue, to bring its state action, claiming that it has not been fully compensated for the recovery it helped secure. (Pls.' Mem. of Law in Opp. to Defs.' Joint Mots. to Dismiss [Doc. No. 32] ("Pls.' Mem. in Opp."), at 13-14.) Plaintiffs ask the Court for a declaration that Schurhammer is obligated to pay attorney's fees for the entire gross settlement recovery,

6

and that he is obligated to indemnify the Plan against any award that O'Brien & Wolf might win in state court.  (*Id.* at 12-13.)

On their face, the General Provisions of the Plan do not appear to include a right of indemnification by Schurhammer for any award that O'Brien & Wolf might obtain.  (*See* Compl., Ex. B [Doc. No. 1-2].)  They provide for subrogation and reimbursement should Schurhammer recover against a third party, and they state that the Plan will not be liable for any of Schurhammer's attorney's fees by operation of law or equity, but they do not state that Schurhammer must indemnify any attorney's fee award against the Plan.  (*Id.*)  It is undisputed that Schurhammer has reimbursed the Plan in full for benefits paid on his behalf.

Plaintiffs argue that the reimbursement provisions should be construed to include an obligation of indemnification for any cost to the Plan resulting from Schurhammer's failure to pay attorney's fees on his gross settlement recovery.  (Pls.' Mem. in Opp., at 14-15.) However, there has been no adjudication of an attorney's lien at this point in time, which might trigger such a duty.  And furthermore, should such an indemnification obligation arise, O'Brien & Wolf stipulates that it will waive any claim for attorney's fees against the Plan if there is a final determination that Schurhammer would be liable to the Plan for those fees.  (Minute Order dated June 19, 2017 [Doc. No. 30]; *see also* Defs.' Mem. in Supp., at 10.)   This stipulation removes any possibility that the Plan can recover against Schurhammer for O'Brien & Wolf's state action.  Thus, Plaintiffs do not state a plausible claim against Schurhammer.  Seeing no set of facts that would give rise to the equitable relief that Plaintiffs seek against Schurhammer, the Court will dismiss those claims.

**B. Ripeness**

As to Plaintiffs' claims against O'Brien & Wolf, the Court finds that they are not ripe for judicial review at this time. Although the parties have not raised the issue in their briefing, the Court may consider a claim's ripeness, *sua sponte*, at any stage of the proceedings. *Bergstrom v. Bergstrom*, 623 F.2d 517, 519 n.1 (8th Cir. 1980); *see also S.D. Mining Ass'n, Inc. v. Lawrence Cty.*, 155 F.3d 1005, 1008 (8th Cir. 1998) ("Although not raised by the parties in this appeal, we first analyze whether the present action is ripe for federal court adjudication.").

The ripeness doctrine flows from both the Article III "cases" and "controversies" limitations and from prudential considerations for refusing to exercise jurisdiction. *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). "Its 'basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation and citation omitted). "'[T]he fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration' must inform any analysis of ripeness." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985) (quoting *Abbot Labs.*, 387 U.S. at 149).

The Declaratory Judgment Act empowers courts to declare, "[i]n a case of actual controversy," the "rights and other legal relations of any interested party seeking such

declaration." 28 U.S.C. § 2201(a). This "actual controversy" prerequisite incorporates Article III's "cases" and "controversies" ripeness requirement. *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012). Thus, "[i]t is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the [ripeness] inquiry is the same in either case." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Of course, "[a] plaintiff does not have to 'await consummation of threatened injury' before bringing a declaratory judgment action." *S.D. Mining Ass'n*, 155 F.3d at 1008 (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Instead, the relevant question is whether "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Md. Cas. Co.*, 312 U.S. at 273).

Plaintiffs' claims against O'Brien &Wolf, as they now stand, are not ripe for judicial determination. They depend on contingent future events, specifically, the results of O'Brien & Wolf's state action for attorney's fees. If the Olmstead County District Court decides that O'Brien & Wolf is not entitled to any attorney's fees, then Plaintiffs' suit before this Court is nothing more than an academic exercise, seeking an advisory opinion from this Court, having no impact on the parties' rights or obligations. "The 'fitness for judicial decision' inquiry . . . safeguards against judicial review of hypothetical or speculative disagreements." *Neb. Pub. Power Dist.*, 234 F.3d at 1038. Until the state action determines whether O'Brien

& Wolf has any right to the money that was reimbursed to the Plan, judicial consideration of Plaintiffs' claims would be speculative.

Further, withholding judicial consideration will not cause significant hardship to the parties. The Plan has received the full $152,738.95 reimbursement and is not currently compelled to do—or refrain from doing—anything with it. The task of defending O'Brien & Wolf's state action is not so burdensome as to warrant a declaratory judgment, especially considering that the Plan may raise the same argument there as it does here—that ERISA preempts the suit. *See Trs. of the Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr*, 694 F.3d 803, 809-10 (7th Cir. 2012) ("Darr's state suit does not prevent the Trustees from fulfilling their duties under ERISA . . . . The Trustees are not precluded from presenting their federal defense in the state court suit and may seek damages for whatever injury caused by Darr's suit if the state court rejects their defenses.")

Comparison to other ripeness determinations in ERISA cases supports the Court's reasoning here. In *Central States, Southeast & Southwest Areas Health & Welfare Fund v. American International Group, Inc.*, a plan sued several insurance companies, seeking a declaration that the insurance companies were primarily liable for medical expenses incurred by some of the plan's beneficiaries, as well as for future medical expenses. 840 F.3d 448, 449-50 (7th Cir. 2016). The Seventh Circuit Court of Appeals held that the claim for a declaratory judgment regarding the insurers' liability for future medical expenses was unripe, because it arose "from hypothetical benefits claims that have yet to be filed—indeed

from injuries that have not yet occurred—so the controversy between the plan and the insurers is not of 'sufficient immediacy' to invoke a federal court's jurisdiction." *Id.* at 451.

Like in *Central States*, the relief Plaintiffs seek here is based on an obligation that has not materialized. No court has determined that the Plan owes attorney's fees to O'Brien & Wolf, so it would premature to rule on ERISA's effect on such a determination.

By contrast, in *Maytag Corp. v. International Union, United Automobile, Aerospace, & Agricultural Workers of America*, the Eighth Circuit Court of Appeals held that the plaintiffs' claims were ripe. 687 F.3d 1076. In that case, Whirlpool Corporation acquired Maytag Corporation and expressed an intention to alter retiree health care coverage at the next collective bargaining. *Id.* at 1080. When the union refused to bargain on retiree health care, indicating that it considered those rights to be vested, Whirlpool filed suit seeking a declaration that the retiree health care benefits were not vested and were subject to change under ERISA. *Id.* About a week later, Whirlpool gave notice to the relevant retirees that their benefits would change at the end of the year. *Id.* The court held that Whirlpool's declaratory judgment action was a justiciable controversy because Whirlpool and the union were "parties to a contract," the contract dispute was "real, in the sense that it [was] not factually hypothetical," and the declaration of rights was "'a *bona fide* necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business.'" *Id.* at 1081-82 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)). The court also held that the dispute "was ripe for immediate judicial resolution because whether retiree benefits were vested turned on historical rather than hypothetical facts." *Id.* at 1082.

The present case is distinguishable from *Maytag*. Unlike the parties in *Maytag*, Plaintiffs and O'Brien & Wolf have no contractual relationship. Plaintiffs do not require a declaratory judgment to continue administering the Plan, because they are not presently compelled to pay out any of the reimbursement the Plan has received. And Plaintiffs' claim rests upon a hypothetical set of facts, because it is wholly irrelevant unless O'Brien & Wolf is successful in its state action.

Thus, for the reasons stated above, the Court finds that Plaintiffs' claims against O'Brien & Wolf are not ripe. Because they may become ripe after the Olmstead County District Court issues an order in O'Brien & Wolf's action for attorney's fees, the Court dismisses these claims without prejudice.

## IV.  ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants' Joint Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. No. 22] is **GRANTED IN PART AND DENIED IN PART**, as follows:

    a.  Plaintiffs' claims against Defendant Travis R. Schurhammer are **DISMISSED WITH PREJUDICE**, and

    b.  Plaintiffs' claims against O'Brien & Wolf, LLP are **DISMISSED WITHOUT PREJUDICE**.

2.  Plaintiffs' Motion for Preliminary Injunction and Expedited Discovery [Doc. No. 4] is **DENIED AS MOOT**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 4, 2018                    **s/Susan Richard Nelson**
                                           SUSAN RICHARD NELSON
                                           United States District Judge